IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONALD J. TRUMP FOR PRESIDENT, INC.

    Plaintiff,

v.

CNN BROADCASTING, INC.;
CNN PRODUCTIONS, INC.; and
CNN INTERACTIVE GROUP, INC.

    Defendants.

Civil Action No.
1:20-cv-01045-MLB

## BRIEF SUPPORTING THE MOTION TO DISMISS

Defendants CNN Broadcasting, Inc., CNN Productions, Inc., and CNN

Interactive Group, Inc. (collectively "CNN") hereby file this brief supporting

their Motion to Dismiss the Complaint filed by Donald J. Trump For President,

Inc. (the "Campaign"), pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

The Campaign's lawsuit takes aim at the heart of constitutional protections

for political speech and opinion: The Trump Campaign seeks to hold CNN liable

for a political op-ed ("Op-Ed") critical of the Campaign and the President.  It is

just one of several lawsuits filed by the Campaign against news organizations,

large and small, seeking to silence a free and open public dialogue about the Campaign and the President.[1] If ever the First Amendment and this nation's strong, vital protections for free speech required prompt dismissal of a lawsuit, they do so here.

The libel claim itself is insubstantial.  The Complaint attacks an isolated statement from the Op-Ed that the Campaign "assessed the potential risks and benefits of again seeking Russia's help in 2020 and has decided to leave that option on the table" (the "Statement"). The Statement is based on revealed, widely-known and unchallenged facts, most notably President Trump's then-recent interview with ABC News in which he stated he would accept information from foreign entities in the 2020 Presidential Election:  **"It's not an interference. They have information.  I think I'd take it."**

The Complaint cannot ignore or plead around what the full Op-Ed actually says, or that the Op-Ed's opinion about the Campaign's willingness to accept foreign help in the 2020 Presidential Election is explicitly based on the

---

[1] *See, e.g.,* https://www.theatlantic.com/ideas/archive/2020/03/true-danger-trump-campaigns-libel-lawsuits/607753/ ("The intention, it seems, is to scare away media outlets from publishing opinion pieces that use particularly critical words to describe his relationship with Russia."); https://www.businessinsider.com/trumps-frivolous-lawsuits-threats-first-amendment-2020-4.

President's own words and the Campaign's conduct. There is nothing false about the Op-Ed. It is pure opinion that is absolutely protected under state and federal constitutional law. The Complaint also cannot plausibly allege CNN published the Op-Ed with the constitutionally-required "actual malice."

This Complaint is an overt attempt by a political campaign to chill speech about a matter of grave public concern and must be dismissed. Over a half-century ago, the Supreme Court stated our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" is the law of this nation. *New York Times v Sullivan*, 376 U.S. 254, 270 (1964). The current attempt to stop that debate fails under basic state law and free speech principles. The Complaint's attacks on CNN and its supposed animus toward the President are an intended distraction from the weakness of its libel claim. The Complaint's defects are fatal, and require dismissal with prejudice.

## II.   BACKGROUND

### A.   The CNN Op-Ed.

The Op-Ed was published June 13, 2019, authored by CNN contributor Larry Noble. It is titled "*Soliciting dirt on your opponents from a foreign government is a crime.  Mueller should have charged Trump campaign officials with it*" ("Title"). A copy of the Op-Ed is included as an attachment to Exhibit A (cited as "Ex. A"),

and can be accessed at https://www.cnn.com/2019/06/13/opinions/mueller-report-trump-russia-opinion-noble/index.html ("Web Page").

1.     **The Op-Ed Is Political Commentary Addressing The 2020 Election Campaign.**

The Web Page is classified under "cnn.com/…/opinions", and the banner categorizes it as "**Opinion** Political Op-Eds Social Commentary." After the Title, the Web Page embeds a video labeled "Trump to ABC: I'd take dirt on a 2020 opponent." That video is a 2:20 minute report on an interview of President Trump by ABC reporter George Stephanopoulos. In the interview, President Trump states he would accept information about a rival presidential candidate from foreign sources and does not consider accepting such information to be "interference" in a domestic election. The video includes this specific exchange:

STEPHANOPOULOS: This time around, if foreigners, if Russia, if China, if someone else offers you information on opponents, should they accept it or should they call the FBI?

TRUMP: I think maybe you do both.  **I think you might want to listen. I don't—there's nothing wrong with listening.** If somebody called from a country, Norway, "We have information on your opponent." Oh, I think I'd want to hear it.

STEPHANOPOULOS: You want that kind of interference in our elections?

> TRUMP: **It's not an interference. They have information. I think I'd take it.** If I thought there was something was wrong, I'd go maybe to the FBI, if I thought there was something wrong. . . .

Web Page, embedded video at 00:35 (emphasis supplied).

After the video, an editor's note describes Mr. Noble as, *inter alia*, the "former general counsel for the Federal Election Commission", and states the "opinions expressed in his commentary are solely those of the author; view more opinion at CNN", providing a link to cnn.com/opinions.

The Op-Ed discusses the report of Special Counsel Robert Mueller (the "Mueller Report") in the context of then-recent conduct by members and associates of the Trump Campaign, including President Trump.[2] At the time the Op-Ed was published, the Report's findings, as well as President Trump's statements to ABC, were vigorously debated in the public arena.[3]

---

[2] The Mueller Report set forth the Special Counsel's findings and conclusions from his investigation into Russian interference in the 2016 presidential election. *See* U.S. Dep't of Justice, Office of Special Counsel, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* at 11-13 (2018). It contains nearly 80 pages of the Special Counsel's findings on whether the Trump Campaign had contact with individuals associated with the Russian government before the 2016 election. *See id.* at 66-144.

[3] https://www.politico.com/story/2019/06/12/trump-fbi-foreign-information-1362788; https://www.foxnews.com/politics/trump-hear-dirt-2020-opponents-fbi; https://www.bbc.com/news/world-us-canada-48618273.

**2.      The Bulk Of The Op-Ed Describes The Mueller Report, The Campaign's Conduct, And Why That Conduct Is Clear Warning The Campaign Has Not Ruled Out Inviting Help From A Foreign Government.**

In the first part of the Op-Ed, Mr. Noble analyzes and summarizes the findings and conclusions of the Mueller Report. Mr. Noble also provides his view of the Report and explains his disagreement with the Special Counsel's decision to not bring criminal charges against Trump Campaign officials:

> It would be a major mistake to let stand the Trump administration's claim, echoed by most Republicans in Congress, that Mueller's decision not to bring criminal charges is the final word and a stamp of approval on the campaign's interaction with Russia.
>
> ***
>
> However, the Trump campaign's actions after the report's release should serve as a clear warning it has not ruled out inviting help from a foreign government.

(Ex. A.) The Op-Ed then details Mr. Noble's reasons for his clear warning and describes the Mueller Report's findings regarding a June 2016 meeting between Trump Campaign Officials and Russian representatives at Trump Tower. Then, Mr. Noble states why he disagreed with the Special Counsel's reasoning for not prosecuting Trump Campaign officials based on that June 2016 meeting.

The final section, under the heading "Trump campaign keeps its options open," lists facts supporting Mr. Noble's view that "it wasn't long [after the Mueller Report's release] before the Trump campaign suggested it was keeping open the option of soliciting help from a foreign government for the 2020

campaign." These facts include: 1.) Rudy Giuliani's announced trip to meet the president-elect of Ukraine; 2.) an interview of Jared Kushner by Axios; and 3.) President Trump's interview, which Mr. Noble indicated "should dispel any lingering doubts about [President Trump's] view of foreign interference in our elections."

**3.     The Op-Ed's Conclusion Summarizes Mr. Noble's Views.**

The last three paragraphs of the Op-Ed include the Statement. These paragraphs synthesize Mr. Noble's view of the Special Counsel's decision to forgo criminal charges, his interpretation of the then-recent Trump Campaign activities, and his hope for the future:

> With this in mind, Mueller may have believed that explaining both the ban on soliciting and accepting foreign national contributions and his concerns about the evidence would deter future campaigns from seeking help from foreign governments, while avoiding the potential risks of filing criminal charges. If so, he may have been a little too optimistic.

> The Trump campaign assessed the potential risks and benefits of again seeking Russia's help in 2020 and has decided to leave that option on the table.

> Let's hope Congress has the will and time to make it clear to the Trump campaign that working with a foreign government to help you get elected is never an option.

(Ex. A.)

**B.      The Complaint Does Not Sufficiently Plead The Op-Ed Is False.**

The Complaint baldly asserts the Op-Ed is "false" and alleges one claim of libel without reference to the applicable law. (Compl. at ¶¶ 27-34.) The Campaign concedes it is a public figure. (*Id*. at ¶ 31.)

The Statement is the only portion of the Op-Ed identified as allegedly false. (Compl. at ¶ 1.) The Complaint claims this statement was "made up out of whole cloth," that the Op-Ed "does not cite to any facts or reasoning in support" of this statement and generally alleges there have been no public statements by the Campaign of "leav[ing] that option on the table" or reports "of any assessment by the Campaign to potentially seek Russian assistance" in the 2020 election. (*Id.* at ¶¶ 12-15.) The Complaint also identifies statements by Trump Campaign or White House officials that purportedly contradict "any intention" by the Campaign to seek Russian involvement in the 2020 election. (*Id.* at ¶ 13.) The Complaint, however, omits that Mr. Noble's opinions were explicitly based on the President's own statement, from just the day before that the President would still be open to receiving information from a foreign nation. Further, the Complaint does not challenge the veracity of any other part of the Op-Ed, including the ABC interview with President Trump.

In an attempt to satisfy the Campaign's constitutional burdens of plausibly alleging actual malice, the Complaint alleges CNN and Mr. Noble are "extremely biased" against the Campaign, asserts CNN did not contact the Campaign before publishing the Op-Ed, and claims "on information and belief, CNN engaged in extensive reporting on the Campaign and its strategies" and therefore "was aware" the "Campaign had not decided to 'leave th[e Russia] option on the table'" when the Op-Ed was published. (*Id.*,¶¶ 16-22.) The Complaint does not, however, plead specific facts showing anyone at CNN was actually, subjectively aware the Statement was false or that any of the disclosed facts, including President Trump's interview, cited in the Op-Ed were false (as none were).

## C.   The Complaint Is One Of Several Lawsuits Filed Against Major News Organizations In An Effort To Deter Statements Critical Of The Trump Campaign And The President.

The instant lawsuit against CNN followed shortly after the Trump Campaign filed libel lawsuits against the *New York Times* and the *Washington Post* for opinion pieces criticizing the President and the Campaign. As with the Op-Ed, these opinion pieces commented on, among other things, the President's and the Campaign's election conduct, Russia, the findings of the Mueller Report and President Trump's interview with ABC News. *Donald J. Trump for President, Inc. v. The New York Times Co.*, Case No. 152099/2020 (N.Y. Sup. Ct. Feb. 26, 2020);

9

*Donald J. Trump for President, Inc. v. WP Company LLC*, Civil No. 1:20-cv-00626 (D.D.C. March 3, 2020). Recently, the Trump Campaign also filed a lawsuit against television station WFJW, a northern Wisconsin NBC affiliate, asserting the television station libeled the Campaign by airing a political ad produced by Priorities USA, a political action committee. *Trump for President v. Northland Television, LLC, d/b/a, WJFW-NBC*, Civil No. 3:20-cv-00385–wmc (W.D. Wis., April 27, 2020).[4]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Standard.

Under Rule 12(b)(6), a libel complaint must plead "enough facts to state a claim to relief that is plausible on its face," construing all allegations in the plaintiff's favor. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (quotations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court, however, "is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits." *Id.* at 707.

---

[4] *See Halmos v. Bomardier Aerospace Corp.*, 404 Fed. App'x 376, 377 (11th Cir. 2010) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

10

The Court may also consider material that is referred to in the Complaint and is central to or integral to the Plaintiff's claims. *See Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (entire book should be considered on motion to dismiss to determine if statement in book is defamatory). Where a purportedly defamatory news article originally appeared in the form of a web page, the Court may also consider the web page as it appeared to readers. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (applying the "incorporation by reference" doctrine to web pages, as "a computer user necessarily views web pages in the context of links through which the user accessed those pages").

**B.    General Standard For Libel Actions.**

Generally, a libel plaintiff must show "(1) a false statement [of fact] that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm . . . ." *Michel*, 816 F.3d at 695 (applying New York law).

**C.    Constitutional Protections In Libel Actions.**

In addition to state law requirements, the First Amendment requires that public figures asserting a libel claim, at a minimum, "plausibly allege that the purported defamatory statement" was 1.) provably false, 2.) actually false, and 3.) made by the defendant with "actual malice." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1270 (M.D. Ala. 2019) (citing *Sullivan*,

11

376 U.S. at 280 ). "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Further, *Twombly*'s plausibility standard equally applies to allegations of "actual malice," requiring a plaintiff to show defendants "actually entertained serious doubts as to the veracity of the published account, or [were] highly aware that the account was probably false." *Michel*, 816 F.3d at 703.

Finally, criticism of public officials and comment on political matters is entitled to the strongest protections afforded by the First Amendment. Indeed, "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). *See also Ocala Star-Banner v. Damron*, 401 U.S. 295, 300-01 (1971) ("Public discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the New York Times [actual malice] rule."). As "[d]iscussion of public issues and debate on the qualifications of candidates are integral to" our system of government, "[t]he First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social

12

changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

As a result, comment on political campaigns is entitled to considerable "breathing space," as "debate on public issues should be uninhibited, robust, and wide-open, and [] it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270-271 ("erroneous statement is inevitable in free debate … it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need * * * to survive", quoting *N.A.A.C.P. v. Button*, 371 U.S. 415 (1963)).

### D.   New York Law Applies.

New York law governs this action.

As the forum state, Georgia law determines which state's law applies to the libel claim. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). Georgia follows the Restatement (Second) of Conflict of Laws (1971), which ordinarily applies the law of the jurisdiction where publication occurred. *See Triguero v. ABN AMRO Bank N.V.*, 273 Ga. App. 92, 95 (2005) (citing Res. (2d) Conflicts § 149 (1971)). In instances of multistate publication—as here, where the Op-Ed was published on CNN.com—the "most significant relationship" test "generally points to the plaintiff's domicile." *Adventure*

*Outdoors Inc. v. Bloomberg*, 519 F. Supp. 2d 1258, 1280 (N.D. Ga. 2007*), rev'd on*

*other grounds* 552 F.3d 1290 (11th Cir. 2008).

Here, the Trump Campaign's principal place of business is New York.

(Compl. at ¶ 5.) As such, New York law applies to the Campaign's libel claim.

*Adventure Outdoors*, 519 F. Supp. 2d at 1280. *See also* Res. 2d Conflicts § 150(3).

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Op-Ed Is Not Actionable Under New York Law.

The Complaint should be dismissed because the New York Constitution

"provides for absolute protection of opinions." *Celle v. Filipino Reporter Enters.*,

209 F.3d 163, 178 (2d Cir. 2000). *See Chau v. Lewis*, 935 F. Supp. 2d 644, 658

(S.D.N.Y. 2013).[5]

---

[5] The Complaint fares no better under Georgia or any other state's law because the Op-Ed is pure opinion and absolutely protected: 1.) under Georgia law, e.g., *Gast v. Brittain*, 277 Ga. 340, 341 (2003) ("An assertion that cannot be proved false cannot be held libelous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be."); and 2.) by the First Amendment and related federal precedent, see *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("Under the First Amendment there is no such thing as a false idea."). *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."); *Turner*, 879 F.3d at 1262 ("[S]tatements of pure opinion are protected from defamation actions by the First Amendment.").

1.     **New York Law On Opinion.**

As recognized by the Eleventh Circuit in *Michel*, "[u]nder New York defamation law, only statements of fact – as opposed to statements of opinion – can be actionable." 816 F.3d at 695. In determining whether the Statement is protected opinion, New York law requires the Court to consider 1.) whether the language has a readily understood, precise meaning; 2.) whether the statement can be proven true or false; 3.) the impression conveyed by the full context of the communication; and 4.) the broader social context and surrounding circumstances. *Michel*, 816 F.3d at 696. "The burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion." *Celle*, 209 F.3d at 179.

If the statement is found to be opinion, the Court must then:

. . . decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.

*Id.* at 178 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986)). If the facts supporting the opinion are revealed, and not challenged as false, the statement is protected opinion. *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997).

Even when individual statements could be read to imply facts, or when the article appears one-sided, New York law still robustly protects opinion when

the article "as a whole" presents the personal view or speculation of the author. *E.g.*, *Immuno AG v. J. Moor-Jankowski*, 77 N.Y.2d 235, 255 (1991) (even when individual statements, examined in isolation, "could be found to contain implied factual assertions," such statements will not be actionable if the communication <u>as a whole</u> indicates that the author "was voicing no more than . . . [his] point of view"). *See also Levin*, 119 F.3d at 197 ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact."). The gist of the New York approach is that its test highly emphasizes context and the article's impression on the ordinary reader. *See id*. at 196.

**2.      The Op-Ed Is Protected Opinion Under The New York Test.**

 **a.      The Statement Itself Is Not Verifiable Fact.**

As to factors (1) and (2), above, the Statement itself is a subjective evaluation of the Campaign's intent, couched in figurative, imprecise language, and thus is not actionable under New York Law.

Under New York law, "[i]mputing a motive or state of mind to a person based on that person's publicly reported conduct is not actionable in defamation." *Cummings v. City of N.Y.*, 2020 WL 882335, at *22 (S.D.N.Y. Feb. 24, 2020). Here, the Statement's thesis that the Campaign "has decided to leave th[e]

16

option" of Russian help "on the table" is a figurative expression that speculates on the Campaign's state of mind and intent. The Statement therefore cannot be proven false, and is simply not actionable under New York law. *Id.* ("[I]nherently subjective evaluations of intent and state of mind . . . are matters not readily verifiable and intrinsically unsuitable as a foundation for defamation."); *Bruno v. New York News, Inc.*, 456 N.Y.S.2d 837, 840 (N.Y. App. Div. 1982) ("[R]eporting that [plaintiff] contemplated wrongful activity is nothing more than ascribing improper motives to him, which may not afford a basis of recovery by a public official").

> **b.    The Context Of The Op-Ed Conveys It Is An Opinion.**

As to factors (3) and (4), the broader social and immediate context of the Op-Ed unmistakably convey that the Op-Ed and Statement itself are opinions relayed in the heat of the public debate on the Trump's Campaign's then-recent conduct and its import for the 2020 election.

First, the Op-Ed was published while the Mueller Report was the subject of substantial attention, and immediately following President Trump's statement that he would accept information about a campaign opponent from a foreign country. The Op-Ed thus contributed to a vigorous debate about what is acceptable conduct in a political campaign. Given this context, the ordinary

reader would understand the Op-Ed as the personal perspective of a former general counsel of the Federal Election Commission, based on President Trump's statement previously quoted in the article. *See Immuno AG*, 77 N.Y.2d at 254 (holding that a communication would be viewed as an expression of opinion when "[t]he letter itself related to a public controversy" from an author whose background on the subject was "fully identified to readers").

Second, the Op-Ed is prominently labeled an "Opinion" and "Op-Ed". It is found in the "opinions" section of CNN's website, and the editorial note at the beginning of the article unmistakably states that Mr. Noble is offering his opinion. *See Mann v. Abel*, 10 N.Y.3d 271, 276-77 (2008) (considering such factors, even though "not dispositive"). The Title is argumentative, stating "Mueller *should* have charged Trump campaign officials," leaving no doubt that the Op-Ed is attempting to convince the reader of a particular viewpoint. *See Immuno AG,* 77 N.Y.2d at 255 ("writer's presumptions and predictions as to what . . . 'should be'" convey an opinion). The Op-Ed's structure and tone are also argumentative,[6] as Mr. Noble builds his case with specific examples of Trump Campaign conduct,

---

[6] The Op-Ed also uses charged language and rhetoric, *i.e.*, by stating the Campaign's actions "should serve as a clear warning," that President Trump's statement should "dispel any lingering doubts about his view of foreign interference in our elections," referring to President Trump's "minions," and arguing the Special Counsel "set a dangerously low bar."

including the President's then-recent interview. These examples clearly lay the

base for Mr. Noble's penultimate conclusion that the Campaign has "decided to

leave the option" of foreign help "on the table." The Op-Ed's ending call for

congressional action is similar to calls for public investigations that courts have

found indicative of opinion. *See Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995).

**3.      The Op-Ed Is Protected "Pure" Opinion.**

Finally, the Op-Ed does not imply it is based on undisclosed facts. To the

contrary, the Op-Ed meticulously sets forth the facts on which it is based,

allowing readers conclude for themselves whether Mr. Noble is correct in

interpreting the Campaign's conduct. As the Op-Ed is pure opinion under New

York law, it is protected, and the Complaint should be dismissed. *Immuno AG,* 77

N.Y.2d at 255. *See Levin,* 119 F.3d at 197.[7]

**B.      The Campaign's Complaint Is Barred By The First Amendment.**

Finally, to the extent there is any doubt under New York law, dismissal is

separately required given the strong First Amendments interest at stake. The Op-

---

[7] Although New York law governs this action, the same result would follow under Georgia law, as Georgia law "unquestionably excludes from defamation liability . . . statements clearly recognizable as pure opinion because the factual premises are revealed." *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890 (1999) ("If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts.").

Ed is political commentary, using strong language and rhetoric to espouse Mr.

Noble's "clear warning" about conduct by the Trump Campaign in the 2020

Presidential Election. This type of political commentary – particularly when

examining the conduct of a presidential campaign – lies at the heart of the First

Amendment, and its protection is essential to a democratic form of government.

*See generally*, *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982);

*Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964); *Sullivan*, *supra*, 376 U.S. at 273 n.14.

The lawsuit, however, seeks to chill speech, not only by CNN, but by other

news organizations.  It is part of a broader effort by the campaign of a sitting

President to punish and deter criticism of the President while he is standing for

re-election.  Such lawsuits cannot stand under the First Amendment, as "the pall

of fear and timidity imposed upon those who would give voice to public

criticism is an atmosphere in which the First Amendment freedoms cannot

survive." *Sullivan*, 376 U.S. at 275. If the Campaign disputes the Op-Ed's

interpretation of President Trump's interview, it can respond by using the

myriad of other channels of communication open to it. *See Gertz*, 418 U.S. at 339-

40 ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.").[8]

In sum, there is nothing false about the Op-Ed.[9] It is political commentary in a medium where strong points of view are expected and necessary for a functioning democracy. *See generally Ollman v. Evans*, 750 F.2d 970, 980-87 (D.C. Cir. 1984) (*en banc*). In fact, the Op-Ed merely "accuse[s] [the Campaign] only of that actual conduct to which [the President] freely admitted" in his interview. *See Horsley v. Feldt*, 304 F.3d 1125, 1133 (11th Cir. 2002). The Op-Ed is therefore commentary protected by the First Amendment.

## C.    The Complaint Does Not Plausibly Allege Actual Malice.

Finally, the Complaint should be dismissed because it does not plausibly allege that CNN acted with "actual malice" in publishing the Op-Ed.

---

[8] "Men in public life, whether they be judges, legislators, [or] executives . . . must accept as an incident of their service harsh criticism . . . particularly so when their activities or performance may be the subject of differing attitudes and stir deep controversy." *Trump v. Chicago Tribune*, 616 F. Supp. 1434, 1426-37 (S.D.N.Y. 1985) (quotations omitted).

[9] To the contrary, the Statement is substantially true based on President Trump's interview: being publically open to receiving opposition research from foreign countries is essentially the same as leaving the option of seeking foreign help "on the table." *See Masson v New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (statement must "have a different effect on the mind of the reader [than] the pleaded truth" to be false).

The First Amendment requires the Trump Campaign, as a public figure, to plead "actual malice" so that the public debate essential to democracy is not chilled. In no way, however, does the Complaint plausibly show that anyone at CNN actually entertained serious doubts about the Op-Ed or that anyone at CNN was highly aware that the account was probably false. *See St. Amant v. Thompson,* 390 U.S. 727, 731 (1968). The allegations of actual malice are either conclusory, insufficient, or defeated by the Complaint.[10]

First, the Complaint's failure (and inability) to challenge the truth of the facts supporting the Statement precludes a finding of actual malice. President Trump's statement that he would accept opposition research from foreign countries, alone, shows CNN had no reason to doubt the veracity of the Statement. *See Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (publication reflecting "one of a number of possible rational interpretations" of an event "that bristled with ambiguities" will not support plausible actual malice claim); *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978) ("The subjective awareness of probable falsity . . . cannot be found when, as here, the publishers allegations

---

[10] To survive a motion to dismiss, "malice must be alleged plausibly in accordance with Rule 8." *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), *cited with approval in Michel*, 816 F.3d at 703. *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff must still point to details" to plausibly allege actual malice).

are supported by a multitude of previous reports upon which the publisher reasonably relied.").[11] Instead, the Complaint merely "attack[s] the <u>reliability</u> of the [publishers'] <u>opinions</u>" and therefore cannot plausibly allege any reason that Mr. Noble's conclusion or his underlying sources were obviously worthy of doubt. *Turner*, 879 F.3d at 1274 (original emphasis).

Second, many of the Complaint's allegations are conclusory. Specifically, the Complaint's allegation that CNN "was aware" that the Statement was false, due to "[e]xtensive public information" and, "[on] information and belief", "extensive reporting", is wholly conclusory as it is bereft of any supporting facts. (Compl. at ¶ 23.) The allegations therefore do not plausibly allege actual malice. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming dismissal).

Third, to the extent the Complaint makes non-conclusory allegations, none raises a plausible inference of actual malice. The allegation that CNN is biased against the Trump Campaign and did not allow the Campaign to review the Op-Ed before it was published do not plausibly allege actual malice, as neither

---

[11] *See also Klayman v. City Pages*, 650 Fed. App'x 744, 750-51 (11th Cir. 2016) (inclusion of information that allows readers to verify its content "tends to undermine claims of actual malice"); *Mallory v. Simon & Schuster*, 728 Fed. App'x 132, 136 (3d Cir. 2018) (plaintiff did not show actual malice as challenged statements were "either substantially true or non-actionable opinion" based on plaintiff's memoir).

allegation shows CNN questioned the reliability of the Op-Ed. *Compare* Compl.

at ¶¶ 16 & 24 *with Biro*, 807 F.3d at 546. *See Sullivan*, 376 U.S. at 287 ("[T]he state

of mind required for actual malice would have to be brought home to the

persons in the Times' organization having responsibility for the publication");

*Turner*, 879 F.3d at 1247 (allegations that a defamation defendant has "fail[ed] to

properly analyze certain information . . . do not give rise to a reasonable

inference" of actual malice); *Smith v. Turner*, 764 F. Supp. 632, 642 (N.D. Ga. 1991)

("Plaintiff's allegations and evidence concerning motives, reasonableness, and

the lack or inadequacy of prior investigation cannot establish actual malice in the

constitutional sense.").[12]

Finally, strict application of the constitutional protections afforded by the

actual malice test is necessary when, as here, the Complaint appears designed to

impose a "chilling effect." As stated by the Eleventh Circuit in *Michel*:

> [T]here is a powerful interest in ensuring that free speech is not unduly
> burdened by the necessity of defending against expensive yet
> groundless litigation. . . . Forcing publishers to defend inappropriate
> suits through expensive discovery proceedings in all cases would
> constrict that breathing space in exactly the manner the actual malice
> standard was intended to prevent. The costs and efforts required to
> defend a lawsuit through that stage of litigation could chill free speech

---

[12] *See Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110,
1118 (9th Cir. 2003) ("Actual malice is not bias. . . . Speech that is 'malicious' only
in the sense that the speaker is biased against his target is fully protected . . . .").

nearly as effectively as the absence of the actual malice standard altogether.

816 F.3d at 702.

In sum, the threadbare allegations of actual malice made in the Complaint do not come anywhere close to establishing "actual malice." The Campaign does not and cannot plausibly allege that CNN entertained any doubts about the Op-Ed. Further amendment of the actual malice allegations is futile as the Campaign cannot change the uncontested facts in the Op-Ed, which defeat "actual malice" on their own. Allowing this lawsuit to proceed further in the midst of an election year — by amendment or discovery — will undoubtedly chill constitutionally protected and valuable political speech. The Complaint should therefore be dismissed with prejudice.

## CONCLUSION

The Motion to Dismiss should be GRANTED WITH PREJUDICE.

Respectfully submitted this 5th day of June, 2020.

*/s/Eric P. Schroeder*

BRYAN CAVE LEIGHTON PAISNER LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar 804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW

Atlanta, Georgia 30309
Telephone:   404-572-6600
Facsimile:    404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Counsel for Defendants*

**<u>Local Rule 7.1(D) Certification of Compliance</u>**

I hereby certify that the foregoing pleading has been prepared with Book Antiqua font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 5th day of June, 2020.

> */s/ Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 5th day of June, 2020.

> */s/ Eric P. Schroeder*
> Eric P. Schroeder
> Ga. Bar 629880