IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.<br>    Plaintiff,<br>v.<br><br>CNN BROADCASTING, INC., *ET AL.*<br><br>    Defendants. | Civil Action File<br>No. 1:20-cv-01045-MLB |

**CNN'S REPLY IN SUPPORT OF THE MOTION TO DISMISS**

**I.      INTRODUCTION**

The Campaign's response confirms the primary intent of this lawsuit is to chill criticism of the President by upending settled law protecting free speech. The Campaign's attempt to muzzle political commentary about the President's re-election campaign is extraordinary. In enacting the First Amendment, this country long ago did away with "the obsolete doctrine that the governed must not criticize their governors."[1]  Yet this Complaint (and the Campaign's other lawsuits) seeks to resurrect that rejected doctrine, contravening laws and

---

[1] *New York Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964) (cit. omitted).

principles long followed in this Nation for ensuring free speech and a working democracy.[2]

The Campaign cannot avoid that under the well-settled law of every state, the Statement in the Op-Ed is core political speech and protected opinion. The Campaign's attempt to re-write the Op-Ed is entitled to no deference from the Court. The Op-Ed speaks for itself.[3] As commentary critical of the President's re-election campaign, the Op-Ed falls well within the considerable "breathing space" afforded political speech by *New York Times v. Sullivan* and the First Amendment. It is not provably false, as it is based on disclosed facts and thus easily understood as subjective opinion by any reasonable reader. And, the Campaign also cannot plausibly plead CNN acted with actual malice in publishing the Op-Ed.

---

[2] The Campaign's argument also contradicts free speech principles invoked by the Campaign when convenient. *E.g.*, *Jacobus v. Trump*, 51 N.Y.S.3d 330, 343 (N.Y. Sup. Ct. 2017) (dismissing libel suit arising from "tweets" by President Trump and his Campaign that "could be found to convey facts" but dismissal was "consistent with . . . the spirit of the First Amendment").

[3] *See Travel Blue Ltd. v. Travelpro Int'l, Inc.*, 2014 WL 12461373, at *2 (S.D. Fla. Mar. 12, 2014) (quoting *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998) (disregarding plaintiffs' characterization of integral documents on motion to dismiss because "[t]he Eleventh Circuit adheres to the time-tested adage: 'if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck.'").

The Campaign's response, Doc. 18 ("**Response**" or "**Resp.**"), tries to persuade the Court by extracting the Statement from the rest of the Op-Ed, suggesting it must be considered without context, and then ignoring or misrepresenting the full Op-Ed.  This sleight-of-hand is not the law.  Ultimately, the Response admits what it must: the "heart" of its claim is that it disagrees with Mr. Noble's conclusion about the Campaign's intentions with Russia, a conclusion that is based on unchallenged facts fully disclosed in the Op-Ed. Under New York, Georgia and federal law, this admission is fatal.  This overt attempt to chill critical political speech must be dismissed.

## II.     The Op-Ed Speaks for Itself.

A first principle of defamation law is to examine a news article in its entirety, as understood by the average reader, to determine a statement's meaning.[4]  Equally unassailable is that political speech criticizing government officials and candidates for office is entitled to the highest protection available

---

[4] *E.g.*, *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 504-05 (S.D.N.Y. 2012) (New York law); *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1994) (Georgia). *Cf. Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 716 (11th Cir. 1985) (a "strictly literal interpretation ignores … how cartoons are traditionally understood by those who view them: '[Such an] interpretation does not construe [the cartoon] as the common mind would understand [it] but is tortured and extreme.'" (cit. omitted)).

3

under the First Amendment.[5]  The Response, however, tries to re-write the Op-Ed and denude it of its political context.

First, the Campaign completely sidesteps the social context of the Op-Ed and its publication just after the President's ABC interview in the midst of a heated debate over the Campaign's conduct and its implications for the 2020 election.  The Campaign's silence on this point underscores its importance: as the FEC's former general counsel, and someone openly critical of the Campaign, Mr. Noble's commentary would be interpreted by any reasonable reader as an opinion, with a point-of-view informed by his experience at the FEC.

Next, the Response misrepresents the Op-Ed's substance.  For example, the Response claims the Op-Ed offers "[n]o facts, reasoning or quotes" to support the Statement, yet the supporting facts are **explicitly listed** under the heading of "***Trump Campaign keeps its options open***" (the "Heading"). (*Compare* Doc. 16-2 *with* Resp., 3 & 16 n.3.)  The Campaign's baseless allegations about what the Op-Ed supposedly says, which are false on their face when compared to the actual text of the Op-Ed, are entitled to no deference.  CNN directs the Court to the Op-Ed itself for Mr. Noble's unabridged summary of these activities, none of which are disputed.

---

[5] Doc. 16-1, "**CNN Br.**," at 11-13 and 19-21.

The Campaign also pretends there is "nothing whatsoever" to signal to readers that the Statement is Mr. Noble's opinion. (Resp., 13-14, 16-17 & 19.) The Op-Ed, however, is replete with unmistakable "qualifiers." The Op-Ed's banner ("**Opinion** Political Op-Eds Social Commentary"), its placement on CNN's opinion section, the editor's note labeling the piece as opinion, and its colorful and figurative language, analogies, and argumentative structure, are obvious indicators the Op-Ed presents opinion. Indeed, the Op-Ed telegraphs the Statement is opinion early-on by arguing the Campaign's actions are a "clear warning" that "it has not ruled out" foreign help, then stating (after the Heading) these actions "suggested it was keeping open [that] option" and the President's ABC interview "should dispel any lingering doubts" about the Campaign's intent. The Statement is part-and-parcel of these (unchallenged) statements.

Finally, the Campaign insists the President did not say he would accept information from Russia in the ABC interview,[6] but instead his comments were

---

[6] The authenticity of Exhibit A and the URL provided therein are unchallenged and can be considered. *See Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). While the Campaign claims the interview is unreviewable "hearsay", Resp. at 17, it is not, as the interview is only being considered to show the President's statements and not for the truth of the matter asserted. FED. R. EVID. 801(c) (defining "hearsay").

limited to Norway or a NATO ally. (Resp., 17, 18 & 21.)  But, there is no dispute about what was actually said:

> STEPHANOPOULOS: This time around, if foreigners, if **Russia**, if **China**, if someone else offers you information on opponents, should they accept it or should they call the FBI?
>
> TRUMP: I think maybe you do both.  **I think you might want to listen. I don't—there's nothing wrong with listening.** If somebody called from a country, Norway, "We have information on your opponent." Oh, I think I'd want to hear it.

Web Page, embedded video at 00:35 (emphasis supplied).

### III.   New York Law Applies, But Georgia Law Also Requires Dismissal.

#### A.   New York Law Applies.

While the Complaint must be dismissed under New York, Georgia or federal law, and CNN cites to all three below, New York law governs this action.

Contrary to the Campaign's argument, Georgia law does not apply due to CNN's presence in Atlanta.  Under the most-significant-relation test, the applicable state law "will usually be the state where the [plaintiff] . . . had its principal place of business", as that is where the plaintiff's "reputation will usually be most grievously affected."  RES. (2D) OF CONFLICTS § 150(3) & cmt. f. As explained in the Restatement's comments, the preference for the plaintiff's domicile *already advances* the "values of certainty, predictability and uniformity of result and of ease in the determination and application of the applicable law

6

(see § 6)." *Id.*, cmt. b. Departure from the Restatement's usual rule is appropriate only if the Campaign demonstrates its reputation was injured more in Georgia than in New York. *See id.*, cmt. f.[7] The Campaign, however, does not argue this point at all. Thus, if the Restatement test is used, New York law applies.

In preparing this reply, counsel for CNN identified an error in its initial analysis of *Adventure Outdoors, Inc. v. Bloomberg*, 519 F. Supp. 2d 1258 (N.D. Ga. 2007). (CNN Br., 14.) In an unpublished ruling denying reconsideration, Judge Forrester found Georgia would likely apply the common law rule of *lex loci delicti* in cases of multistate defamation instead of the most-significant-relationship test. *Adventure Outdoors, Inc. v. Bloomberg*, 2007 WL 9735875, at *3 (N.D. Ga. Dec. 18, 2007).[8] CNN believes the *lex loci delicti* rule should be applied here for the reasons set forth therein. But as in *Adventure Outdoors*, the result here does not change.

---

[7] The examples provided in the Restatement include: (a) the plaintiff is better known in another state; (b) the defamatory matter relates to plaintiff's activity in another state; (c) the plaintiff suffered greater special damages in another state; or (d) the "place of principal circulation of" the defamatory matter was in another state. *Id*. cmt. f.  None of these exceptions apply here.

[8] Notwithstanding this later ruling, subsequent cases have cited Judge Forrester's original published opinion applying the Restatement. *Field Turf USA Inc. v. TenCate Thiolon Middle East, LLC*, 2011 WL 13234177, at *2 (N.D. Ga. Dec. 20, 2011) (Thrash, J.); *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 112 (D.D.C. 2011).

In cases of multistate publication, "lex loci jurisdictions have shown remarkable consistency . . . [and] look to the law of the jurisdiction where the plaintiff suffered the greatest injury . . . [which] is usually" plaintiff's domicile. *Hatfill v. Foster*, 415 F. Supp. 2d 353, 364-65 (S.D.N.Y. 2006), *cited with approval in Adventure Outdoors*, 2007 WL 9735875, at *3 (rejecting the Restatement's "policy arguments" as "inapplicable" under *lex loci delicti*). *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 665 (W.D. Va. 2019); *Ascend Health Corp v. Wells*, 2013 WL 1010589, *2 (E.D.N.C. Mar. 14, 2013) (addressing publication via Internet). Thus, for substantially similar reasons, New York law applies under this test as well.

### B. The Complaint Is Meritless Because The Statement Is Protected Opinion.

The Campaign's response repeatedly disregards the contextual analysis required by New York (and Georgia) law.[9] (CNN Br., 15-16.) In New York:

> **[S]tatements must first be viewed in their context in order for courts to determine whether a reasonable person would view them as expressing or implying *any* facts.** . . . Isolating challenged speech and first extracting its express and implied factual statements, without knowing the full context in which they were uttered, indeed may result

---

[9] To the extent the Campaign suggests *Brewer v. Purvis*, 816 F. Supp. 1560 (M.D. Ga. 1993) and *Eidson v. Berry*, 202 Ga. App. 587 (1992), Resp. at 12, support viewing the Statement in isolation, that is not Georgia law. *See Gast v. Brittain*, 277 Ga. 340, 341 (2003) (statement only actionable "if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts . . . capable of being proved false").

> in identifying many more implied factual assertions than would a reasonable person encountering that expression in context.

*Immuno AG v Moor-Jankowski*, 77 N.Y.2d 235, 254-55 (1991) (emphasis added).

Thus, it is the Campaign's burden to show "in the context of the entire communication [the Statement] is not protected opinion." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000). As the Campaign discards context altogether, the Court should dismiss the Complaint for the reasons stated in CNN's opening brief and as set forth below. (CNN Br., 16-19.)

Moreover, the Campaign does not challenge the accuracy of the facts supporting the Statement in the Op-Ed, or the principle that opinions based on disclosed facts are not actionable. Instead, it claims the facts do not support Mr. Noble's conclusion. (Resp., 16 n.6 & 17-18.) These admissions are fatal to the Complaint.

Contrary to the Response, the Statement is not a statement of fact conveying the Campaign made an "actual assessment" to seek Russian assistance. Instead, in context, the Statement is clearly a hypothesis based on facts disclosed in the Op-Ed and is therefore absolutely protected opinion as it is not verifiably false. *See Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (New York law). *See also Koly v. Enney*, 269 F. App'x 861, 865 (11th Cir. 2008) (district

9

court abused its discretion denying Rule 11 sanctions in a libel action because, *inter alia*, Georgia law "unquestionably excludes from defamation liability . . . statements clearly recognizable as pure opinion because their factual premises are revealed"); *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (First Amendment protects author's "personal perspective" about "a controversial occurrence . . . Otherwise, there would be no room for expressions of opinion by commentators . . . or others whose perspectives [are] of interest to the public.").

The Response's assertion that the Campaign's conduct is not the basis for the Statement is directly contradicted by the article itself.[10] The supporting conduct is listed under the Heading shortly before the Statement, making it clear to the reader that the Statement is based on those facts. (CNN Br., 6-7, Ex. A.) At no point does the Op-Ed even raise the spectre that the Statement is based on facts known by Mr. Noble but "unknown to those reading or hearing it . . . ." *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

Next, the Campaign disagrees with the inference Mr. Noble draws, insisting he could at most conclude the Campaign was open to foreign help, but

---

[10] The Response's assertion that the Statement is a fact statement "offered in support of some other opinion held by Mr. Noble" makes no sense. (Resp., 14-15.) The Statement is the second-to-last sentence in the Op-Ed. It sums up all that came before. The only "other opinion" it supports is the call for public action.

not *Russian* help. (Resp., 17-18, claiming this is "the heart of why CNN's statement is defamatory".)  In other words, the Campaign disputes Mr. Noble's *conclusion* from the facts, and not the facts themselves.  This admission establishes the Statement is opinion absolutely protected by New York law, Georgia law, and the First Amendment. *Id. Accord Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018) ("that another reader might come to a different conclusion upon review of the facts . . . does not make Defendants' assessment . . . anything other than an opinion."); *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1995) (same).

The context and tenor of the Op-Ed reinforces that the Statement is pure opinion. *Mann v. Abel*, 10 N.Y.3d 271, 277 (2008) ("tenor of the column . . . clearly signals the reader that the piece is likely to be opinion, not fact").  The Op-Ed was published shortly after President Trump's interview.  It is presented as commentary (and labeled as "Opinion") by the FEC's former general counsel. *See Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995) (op-ed format creates the "common expectation" that the communication represents "the viewpoint of [its] author[] and . . . contain[s] considerable hyperbole, speculation, diversified forms of expression and opinion").

The Op-Ed's structure, which lists the facts under the Heading before the Statement and call for Congressional action, indelibly conveys the Op-Ed is an

opinion piece. (CNN Br., 17-19). *See, e.g.*, *Immuno*, 77 N.Y.2d at 255 (even if statements "could be found to contain implied factual assertions," viewed in context "it would be plain to the reasonable reader" that defendant "was voicing no more than a highly partisan point of view.").[11] Even if improperly viewed in isolation, the Statement cannot be proven false, as it sets forth a subjective prediction of the Campaign's state of mind based on its conduct, which is "hardly capable of being proven false . . . ." *See Cummings v. City of N.Y.*, 2020 WL 882335 at *22 (S.D.N.Y. Feb. 24, 2020); *Jacobus*, 51 N.Y.S.3d at 343.[12]

Finally, and completely unaddressed by the Response, the Op-Ed is political commentary on conduct by a political campaign for the presidency. This

---

[11] The Campaign's reliance on *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) is misplaced. *Gross* emphasized that the context in that case - investigative reports - "encourag[ed] the reasonable reader to be less skeptical and more willing to conclude that [they] stat[ed] or impl[ied] facts," while a hypothesis based on disclosed facts "is readily understood by the audience as conjecture." *Id.* at 154, 156.

[12] The Campaign's plea that the Court disregard *Cummings* and distinguish *Bruno v. New York News, Inc.*, 456 N.Y.S.2d 837 (1982) has no foundation in law or fact. (Resp., 16-17.) Consistent with *Cummings*, the Op-Ed is an "inherently subjective evaluation [of the Campaign's] state of mind." 2020 WL 882335 at *22. In *Bruno*, the defendant asserted a former director of the state lottery "contemplat[ed] fiscal manipulation" of the lottery, which the court determined was protected opinion. 456 N.Y.S.2d at 840 ("reporting [plaintiff] contemplated wrongful activity is nothing more than ascribing improper motives to him"). Similarly, the Op-Ed, based on revealed facts, only speculates that the Campaign may "contemplate wrongful activity."

is core political speech that is entitled to the fullest "breathing space" under *New York Times v. Sullivan* and the First Amendment. *See Sullivan*, 376 U.S. at 271-72. *Accord Ollman v. Evans*, 750 F.2d 970, 991 (D.C. Cir. 1984) (*en banc*) ("contraction of liberty's 'breathing space' can only" inhibit public discussion); *Adelson v. Harris*, 973 F. Supp. 2d 467, 489 (S.D.N.Y. 2013) (quoting 1 *Sack on Defamation* § 4:3:1 ) ("courts 'shelter strong, even outrageous political speech,'" because "the ordinary reader or listener will, in the context of political debate, assume that vituperation is some form of political opinion neither demonstrably true nor demonstrably false'"; collecting cases), *aff'd* 876 F.3d 413 (2d Cir. 2017). If the Campaign disputes Mr. Noble's opinion, it may broadcast its displeasure; it cannot, however, sustain lawsuits that amount to punishing criticism of a campaign for President of the United Sates.

## C. The Complaint Does Not Plausibly Allege Actual Malice.

While the Court need not reach this issue, this case also must be dismissed for the separate and independent reason that the Campaign failed to sufficiently allege actual malice.

First, the Campaign's argument that it disclaimed seeking Russian help is of little moment. The Campaign's conduct speaks louder than its words. At most, these allegations merely contend CNN "fail[ed] to properly analyze certain

information"—that is, they "attack the <u>reliability</u> of the [author's] <u>opinions</u> . . . ." *See Turner*, 879 F.3d at 1274 (original emphasis). Even if the Campaign believes such statements should have been included, this does "not give rise to a reasonable inference that [CNN] knowingly or with reckless disregard published a false statement of fact" in light of the undisputed facts regarding its *conduct*. *See id.*

Second, the Op-Ed cites ample evidence supporting the Statement. The Op-Ed includes eighteen hyperlinks to Mr. Noble's factual sources, and none are challenged as untrustworthy. The Campaign's only challenge is that these factual sources do not support and are "completely different" from the conclusion drawn in the Statement. (Resp., 21.) Thus, again, the Campaign challenges only the "reliability" of Mr. Noble's *interpretation* of such sources, like the President's interview, which cannot establish actual malice.[13] *Turner*, 879 F.3d at 1274. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017) (author's "investigation, in which he looked to trustworthy sources, demonstrate[d] lack of" actual malice).

---

[13] The Campaign's insistence that the President only referred to Norway in his interview is simply not true, as explained above. And *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) is not distinguishable, as the Statement is a rational interpretation of the President's interview. Indeed, a business that publicly announces it is "accepting" new customers can hardly say it is not "seeking" them by that act.

14

Finally, *Palin v. New York Times Company*, 940 F.3d 804 (2d Cir. 2019) is simply not applicable here. This case involves an opinion with facts that were fully disclosed and are incontrovertible. *Palin*, in contrast, addresses the sufficiency of pleading "knowledge" of provably false facts. *Id*. at 814-15. Here, the Complaint's allegations are simply too scant to plausibly allege actual malice. *E.g.*, *Lovingood v. Discovery Commc'ns, Inc.*, 800 F. App'x 840, 850 (11th Cir. 2020) ("plaintiff must point to evidence that the defendant had real, subjective suspicions about the veracity of the statement"); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (author's motives "play[] no role in determining … 'actual malice'"). *See Biro v. Conde Nast*, 807 F.3d 541, 544-46 (2d Cir. 2015) (conclusory allegations of actual malice cannot survive dismissal), *cited with approval by Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

In sum, the Complaint's actual malice allegations not only lack sufficient detail; they also fail because the Campaign cannot challenge the truth of any supporting fact in the Op-Ed. Further pleading will not cure this defect.

## CONCLUSION

Allowing this suit to proceed further in this election year will undoubtedly chill other valuable political speech, and it should be dismissed with prejudice.

Respectfully submitted this 20th day of July, 2020.

*/s/ Eric P. Schroeder*
BRYAN CAVE LEIGHTON PAISNER LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar 804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:  404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Counsel for Defendants*

## Local Rule 7.1(D) Certification of Compliance

I hereby certify that the foregoing pleading has been prepared with Book Antiqua font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 20th day of July, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 20th day of July, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880