# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Donald J. Trump for President, Inc.,

        Plaintiff,

v.

CNN Broadcasting, Inc., et al.,

        Defendants.

_____/

Case No. 1:20-cv-01045

Michael L. Brown
United States District Judge

## OPINION & ORDER

Defendants CNN Broadcasting, Inc., CNN Productions, Inc., and CNN Interactive Group, Inc. move to dismiss Plaintiff Donald J. Trump for President's libel claim. (Dkt. 16.) The Court grants Defendants' motion and dismisses Plaintiff's complaint for failing sufficiently to plead malice. The Court, however, allows Plaintiff the opportunity to file an amended complaint.

## I. Background

On June 13, 2019, CNN contributor Larry Noble published an article entitled "Soliciting dirt on your opponents from a foreign

government is a crime. Mueller should have charged Trump campaign officials with it." (Dkt. 1 ¶ 12.) After discussing Robert Mueller's investigation into Russian interference in the 2016 presidential election, President Trump's response to the investigation, and subsequent statements by President Trump, Rudy Giuliani (one of President Trump's attorneys), and Jared Kushner (President Trump's son-in-law and senior advisor) about potential (or hypothetical) involvement by foreign governments in the 2020 election, Mr. Noble wrote: "The Trump campaign assessed the potential risks and benefits of again seeking Russia's help in 2020 and has decided to leave that option on the table" ("the Statement"). (*Id.* ¶ 1.)

Plaintiff sued Defendants for libel, claiming the Statement is defamatory and false and that, at the time of publication, Defendants knew it was false. (*Id.* ¶¶ 1–2.) Defendants move to dismiss for failure to state a claim. (Dkt. 16.) Defendants argue the article is a political op-ed and the Statement is not actionable because statements of opinion are absolutely protected under state and federal constitutional law. (*Id.* at 2.) Defendants, in the alternative, argue that Plaintiff failed to "plead specific facts showing anyone at CNN was actually, subjectively aware

2

the Statement was false"—that is, Plaintiff failed to plead Defendants acted with actual malice in publishing the Statement. (Dkt. 16-1 at 9.)

## II. Standard of Review

In ruling on a motion to dismiss, the court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). A complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim and should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint thus must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Discussion

### A. Choice of Law

Because this is a diversity action filed in Georgia, the Court applies Georgia's choice-of-law provisions. *U.S. Fidelity & Guar. Co. v. Liberty*

*Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008). Georgia follows the doctrine of *lex loci delicti*, which provides that a tort action is governed by the substantive law of the state where the tort was committed. *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 416–19 (Ga. 2005). Despite this, Plaintiff asks the Court to apply the "most significant relationship test" from the Restatement (Second) Conflicts of Law. (Dkt. 18 at 6–7.) In reliance on this test, Plaintiff claims "the law of the jurisdiction where the publication occurs determines the rights and liabilities of the parties." (*Id.* at 6.) Plaintiff cites *Triguero v. ABN AMRO Bank N.V.*, 614 S.E.2d 209, 212 (Ga. Ct. App. 2005), to support this assertion and then claims the publication in this case "occurred in Atlanta, where CNN is located." (Dkt. 18 at 6–7.) Finally, Plaintiff contends this Court in *Adventure Outdoors, Inc. v. Bloomberg,* 519 F. Supp. 2d 1258, 1280 (N.D. Ga. 2007), previously applied the Restatement (Second) Conflict of Law's "most significant relationship test" in resolving a choice of law dispute in a defamation case. (Dkt. 18 at 7.)

Plaintiff's analysis of legal authority contains several errors. First, Plaintiff ignores the fact that, after the Georgia Court of Appeals applied the Restatement's test in *Triguero*, the Georgia Supreme Court rejected

4

that approach. Albeit not in a defamation case, the Georgia Court reached the "inescapable conclusion . . . that the approach of the Restatement (Second) of Conflict of Laws is not superior to the traditional rule of *lex loci delicti* currently used in Georgia." *Dowis*, 621 S.E.2d at 416–19. The Georgia Supreme Court made it clear that "the rule of *lex loci delicti* remains the law of Georgia." *Id.* at 419. In the light of *Dowis*, *Triguero* has little weight. Second, even if *Triguero* applied, the Georgia Court of Appeals in that case did not interpret the place of publication as the place where the defamatory statement was uttered as Plaintiff suggests. Rather, it identified the place of publication as the location where the tortious statement was received (in that case the Netherlands). *Triguero*, 614 S.E.2d at 212. *Triguero* thus does not support Plaintiff's quest to apply Georgia law. Finally, while Plaintiff cites *Adventure Outdoors* for its application of the Restatement's most significant relationship test, it fails to note that the *Adventure Outdoors* court later reconsidered the issue and—following *Dowis*—concluded "Georgia would not apply the Restatement (Second) Conflict of Laws under any circumstances, but would rather apply the traditional choice of law principles of *lex loci delicti*." *Adventure Outdoors, Inc. v. Bloomberg*, No.

5

1:06-cv-2897, 2007 WL 9735875, at *3 (N.D. Ga. Dec. 18, 2007). All of this is to say the Court can find no legal authority for applying the most significant relationship test under Georgia's choice-of-law analysis and, instead, applies the doctrine of *lex loci delicti*.[1]

The Court is unaware of any Georgia case applying the doctrine of *lex loci delicti* in a multi-forum defamation case. The general rule in a transitory tort case, however, "is that the place of wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed." *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E.2d 738, 740 (Ga. Ct. App. 1984). Applying the doctrine of *lex loci delicti*, the *Adventure Outdoors* court in its order on reconsideration held the place of injury in multi-state defamation cases is where the plaintiff is domiciled. *Adventure Outdoors*, 2007 WL 9735875, at *3; *see also Hatfill v. Foster*, 415 F. Supp. 2d 353, 364–65

---

[1] The Court recognizes that another federal court applying Georgia's choice-of-law rules followed the Restatement (Second) of Conflict of Laws in a defamation action arising from a multi-state publication. *See Ramsey v. Fox News Network, L.L.C.*, 351 F. Supp. 2d 1145 (D. Colo. 2005) (applying Georgia's choice of law provisions). But the court rendered that decision before *Dowis* and, therefore, without its definitive rejection of the Restatement approach. *Dowis*, 621 S.E.2d at 418.

(S.D.N.Y. 2006) (discussing the application of *lex loci delicti* to choice of law questions for multi-state defamation and holding that the place of greatest harm is where the plaintiff is domiciled). In doing so, the court recognized that, while the "[d]efendants' statements were published (at least) in both New York and Georgia," the plaintiff suffered injury to his reputation where he was located—that is, Georgia. *Adventure Outdoors*, 2007 WL 9735875, at *3. The Court adopts that same reasoning. The place of the wrong is not where the allegedly defamatory statement was issued but rather where Plaintiff was injured, that is, its domicile.

A corporation, like Plaintiff, is domiciled in its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff's place of incorporation is Virginia and its principal place of business is New York. (Dkt. 1 ¶ 5.) Neither party argues that Virginia law should apply to this cause of action, and the alleged injury—that is, harm to Plaintiff's reputation—is more principally felt where it has its ongoing operations, as opposed to where

7

it is incorporated. Thus, under the doctrine of *lex loci delicti*, the law of New York applies to Plaintiff's libel claim.[2]

## B. Merits of the Motion to Dismiss

To prove libel under New York law, a plaintiff must establish five elements: "(1) a written defamatory statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). A public figure—like Plaintiff here—must also prove that "an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001)).

---

[2] Interestingly, and contrary to Plaintiff's assertion, New York law would also apply under the Restatement (Second) of Conflict of Laws. It instructs the court to apply the law of the forum that has the most significant relationship to the controversy. Restatement (Second) of Conflict of Laws § 150 (Am. Law Inst. 1971). It also provides that, "[w]hen a corporation . . . claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation . . . had its principal place of business at the time." *Id.* § 150(3). In this case, that would mean New York.

Importantly, under New York law, "only statements of fact—as opposed to statements of opinion—can be actionable" as defamation. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016) (applying New York law). The New York Court of Appeals has explained that "[s]ince falsity is a *sine qua non* of a libel claim and since only assertions of fact are capable of being proven false, we have consistently held that a libel action cannot be maintained unless it is premised on published assertions of *fact*." *Brian v. Richardson,* 660 N.E.2d 1126, 1129 (N.Y. 1995). Whether a particular statement constitutes fact or opinion "is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean." *Michel*, 816 F.3d at 695 (citing *Davis v. Boeheim*, 22 N.E.3d 999, 1004–05 (N.Y. 2014)). In making this determination, New York courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* at 696 (quoting *Boeheim*, 22 N.E.3d at 1005).

9

Defendants argue the Statement is an opinion and cannot reasonably be understood as an assertion of provably false facts. (Dkt. 16-1 at 16–19.) The Court disagrees. As to the first factor, the Statement has two parts: whether Plaintiff conducted an assessment of the potential risks and benefits of again seeking Russia's help in 2020 and whether it left that option "on the table." A reasonable reader could readily understand the first part as alleging a weighing of the risks and benefits. It has a precise meaning. Defendants argue the second part is "couched in figurative, imprecise language, and thus is not actionable under New York [l]aw." (*Id.* at 16.) The Court disagrees. While "[s]tatements 'couched in loose, figurative or hyperbolic language in charged circumstances' are more likely to be deemed opinions," it is not an inflexible rule, and "the court should weigh the totality of the circumstances." *Michel,* 816 F.3d at 696 (quoting *Immuno AG v. Moor-Jankowski,* 567 N.E.2d 1270, 1281 (N.Y. 1991)). Thus, while "left on the table" is figurative language, it is also precise language. A reasonable reader could readily understand it to mean "available for consideration." The Statement satisfies the first factor of the test.

10

The Statement is also capable of being proven true or false. Either Plaintiff conducted an assessment regarding "the potential risks and benefits of again seeking Russia's help in 2020" or it did not. Similarly, either Plaintiff "decided to leave that option on the table" or it did not. The Statement is thus subject to verification and satisfies the second factor of the test.

Having found the first two factors weigh in favor of Plaintiff, the Court turns to the third. In *Mann v. Abel*, 885 N.E.2d 884 (N.Y. 2008), the New York Court of Appeals examined a "piece, preceded by an editorial note indicating that it was an expression of opinion, [that] referred to Mann[, the town attorney,] as a 'political hatchet Mann' and said that he was 'leading the Town of Rye to destruction.'" *Michel*, 816 F.3d at 698 (discussing the *Mann* case). The *Mann* court concluded that the rhetorical flourishes along with the broad context in which the piece appeared—on the opinion page with a note indicating that it represented the author's opinion—were likely to be interpreted by reasonable readers as expressions of opinion. *Mann*, 885 N.E.2d at 886. The article at issue here is similar to the one in *Mann*. For example, the article opens with a disclaimer of opinion and contains similar rhetorical flourishes (*e.g.*,

11

"President Donald Trump and his minions"). (Dkts. 16-1 at 18; 16-2 at 5.) And, like the article in *Mann*, this article was published in the Opinions section of the CNN website. (Dkt. 16-1 at 18.) These aspects of the article suggest the Statement is protected opinion.

The context of the Statement within the article, however, points in the opposite direction. The paragraphs above and below the Statement contain softening language which signals to readers that they are not reading a factual account. *See Michel,* 816 F.3d at 700 (weighing softening language as a factor); *Moor-Jankowski,* 567 N.E.2d at 1281 (explaining that the average reader would not view predictions as to what "appeared to be," "might well be," "could well happen," or "should be" as conveying actual facts); *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (noting that the article signaled, through the use of such terms as "versions" and "imagined," that it was not offering statements of fact). The paragraph above uses "may" in each sentence and the paragraph below begins with "[l]et's hope." (Dkt. 16-2 at 9.) Both phrases signal that Mr. Noble is expressing his opinion. The Statement itself contains no such qualifying language—it simply asserts that the Trump campaign assessed potential risks against potential benefits and decided to leave

the possibility of help from Russia on the table. It does not say Plaintiff "may have" conducted such an assessment or that it "might have" made a decision. It does not say that Mr. Noble "fears" Plaintiff did either of these things or that statements by people connected to the campaign "suggest" it did so. The Statement has no such qualifying or softening language.

The context also shows Mr. Noble used the Statement as a fact to pivot from what he believes happened in the past to what he hopes will happen in the future. The use of the word "may" in the preceding paragraph refers to what Mr. Noble believes Mr. Mueller might have intended when he discussed foreign involvement in U.S. elections. He expresses the opinion Mr. Mueller "may" have included certain warnings to "deter" future campaigns from seeking help from foreign governments. He then expressed his clear opinion that Mr. Mueller "may have been a little too optimistic." Likewise, the "hopefulness" expressed in the last paragraph is Mr. Noble's hope for what he wants Congress to do in response to the decision he claims Plaintiff made to remain open to Russian assistance in the 2020 election. Both his opinion of Mr. Mueller's misplaced optimism and his opinion of what Congress should do arise

13

from his factual assertion that Plaintiff made a decision to remain open to "seeking Russia's help in 2020." The factual assertion provides the bridge that spans from Mr. Noble's assessment of Mr. Mueller's dissection of the 2016 election to his call for congressional action in advance of the 2020 election. His opinion lies on both sides with the Statement as a factual allegation bringing them together. The context of the Statement (both in the article and in Mr. Noble's discussion of current events) suggest to readers that the Statement is a statement of fact, not opinion.

One could certainly sift through the article and find other expressions of Mr. Noble's opinion besides those already discussed. But the Statement at issue does not constitute such an expression. The three-factor test establishes it as a statement of fact.

Defendants alternatively argue Plaintiff did not plausibly allege the Statement was made with actual malice. (Dkt. 16-1 at 21–25.) The Court agrees. The level of fault required depends on the status of the plaintiff. Plaintiff concedes it is a public figure. (Dkt. 1 ¶ 31.) As a matter of constitutional law, a public figure plaintiff must prove actual malice, meaning the allegedly libelous statement was "made with knowledge

14

that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809–10.

Most of the allegations in the complaint regarding actual malice are conclusory. Plaintiff, for example, alleges in a purely conclusory manner that Defendants "clearly had a malicious motive" and "knowingly disregarded all . . . information when it published the Defamatory Article." (Dkt. 1 ¶ 23.) The complaint's allegation that Defendants were "aware at the time of publication" that the Statement was false due to "[e]xtensive public information" is also conclusory and without factual support.[3] (*Id.*) Allegations such as these amount to little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are insufficient to support a cause of action. *Iqbal*, 556 U.S. at 678.

Plaintiff's only other allegation of actual malice is that Mr. Noble had "a record of malice and bias against the President" as evidenced by a

---

[3] Even so, the Supreme Court has held that "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974). Thus, Mr. Noble's failure to investigate and seek out public information is insufficient to plead actual malice.

15

tweet and previous articles he had written. (Dkt. 1 ¶ 22.) In the tweet, Mr. Noble wrote: "Trump cheats and lies, and when caught, lies again and claims the right to make the rules. He claims defeats as victories, takes credit for anyone's success and blames his failures on others . . . ." (*Id.*) The Supreme Court has emphasized "that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). The tweet might show Mr. Noble's ill will towards the President, but it fails to plead actual malice in the constitutional sense—that is, it does not show Mr. Noble made the Statement with knowledge that it was false or with reckless disregard of whether it was false.[4]

---

[4] Similarly, the complaint's allegation that other CNN staff members are biased against Plaintiff is insufficient to plead actual malice for two reasons. (Dkt. 1 ¶¶ 16–20.) First, "[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood." *Don King Productions, Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. Dist. Ct. App. 2010) (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)). Second, "the state of mind required for actual malice [must] be brought home to the persons in the . . . organization having responsibility for the publication." *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964). And the complaint does not connect the CNN staff members (namely, Nick

In the previous articles, Mr. Noble "accus[ed] the President of criminal activity[] and of campaign finance and ethics violations." (Dkt. 1 ¶ 22.) Plaintiff argues this is sufficient because the *Palin* court held "that actual malice could be proven by . . . the *New York Times'* prior stories which showed that it was aware of the true facts, but published the false facts in the piece at issue, in reckless disregard for the truth." (Dkt. 18 at 20–21.) That is not the case here. In *Palin*, the prior articles directly related to the topic of the defamatory statement at issue. *Palin*, 940 F.3d at 809. Here, however, the prior articles allegedly relate to criminal activity and campaign finance/ethics violations. They cover different topics than the Statement, meaning the prior articles did not touch directly on whether Plaintiff "assessed the potential risks and benefits of again seeking Russia's help in 2020" and whether Plaintiff "decided to leave that option on the table." The prior articles mentioned in the complaint simply do not show or suggest Mr. Noble "was aware of the true facts" regarding the Statement and published false facts in reckless disregard of the truth. For these reasons, Plaintiff did not

---

Neville, Jeff Zucker, John Bonifield, Christian Sierra, and Cary Poarch) to the specific article in question. (Dkt. 1 ¶¶ 16–20.)

17

adequately plead that the Statement was published with actual malice. The Court, however, allows Plaintiff the opportunity to file an amended complaint.

## IV.  Conclusion

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 16) and **DISMISSES** Plaintiff's Complaint (Dkt. 1).  The Court **ORDERS** Plaintiff to file an amended complaint no later than November 30, 2020.

**SO ORDERED** this 12th day of November, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE